THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
LOREN E. MEYERS, Defendant-Appellee.

Third District   No. 81-255

Opinion filed October 19, 1982.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The State appeals from a suppression order entered by the circuit court of Peoria County, Illinois.

The defendant, Loren E. Meyers, was indicted for indecent liberties with a child. Prior to trial, the defendant moved to suppress certain statements and admissions on the basis that they had been obtained in violation of his sixth amendment right to counsel. The trial court granted the defendant's motion, and the State has appealed, contending that the court's ruling is contrary to the manifest weight of the evidence. The defendant, in addition to arguing that the trial court's order of suppression is sufficiently supported by the evidence of record, requests that this court dismiss the State's appeal. The basis for the defendant's request is that prior to filing its notice of appeal the State failed to certify to the trial court that the suppression order substantially impairs the State's ability to prosecute the case. (See *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501.) Because of apparent inconsistencies in case-law interpreting the *Young* certification requirement and because a motion and objections involving the same were taken with the case herein, we address the issue in detail.

The facts relevant to the certification issue in the present case follow. On April 9, 1981, the trial court entered its order suppressing the defendant's statements. The State thereafter filed a notice of appeal on May 5, 1981; and on May 18, 1981, the office of the State Appellate Defender was appointed to represent the defendant. On August 3, 1981, the State, *without* notifying appellate defense counsel, returned to the trial court and filed a certification substantially complying with the *Young* requirement. On August 18, one week after filing its brief on appeal, the State filed its certification with this court as a supplemental volume to the record on appeal. This filing was unaccompanied by any motion or petition for leave to supplement the record, and there is no indication that the State gave appellate defense counsel notice of such filing. Nonetheless, on August 20, 1981, the defendant moved to strike the certification filed in this court. On August 27, 1981, the State filed an objection to the defendant's motion, and this court ruled that the motion and objection would be taken with the case.

Initially we note that the above-outlined pattern of conduct, as between the office of the State Appellate Defender and the State's Attorneys Appellate Service Commission, which represents the State on appeal, is not unprecedented since the Illinois Supreme Court announced the certification requirement in *Young*. See, *e.g.*, *People v. Hoffner* (1981), 99 Ill. App. 3d 516, 425 N.E.2d 603; *People v. Norris*

(1981), 101 Ill. App. 3d 664, 428 N.E.2d 987; *People v. Jones* (1981), 102 Ill. App. 3d 238, 429 N.E.2d 1094; *People v. Keath* (1981), 101 Ill. App. 3d 652, 428 N.E.2d 992.

Our inquiry in this case is two-pronged—(1) whether certification is necessary; and (2) whether certification, if required, may be filed after the State has filed its notice of appeal. In *Hoffner*, this court rejected the defendant's argument that the State, having failed to satisfy the *Young* certification requirement, thereby failed to perfect its right to an interlocutory appeal. We determined in *Hoffner* that the State was not required to file certification on the basis that "the *Young* decision does not apply *** to State appeals of suppression orders from which the State was allowed to appeal prior to *Young*" (99 Ill. App. 3d 516, 517, 425 N.E.2d 603, 605), and proceeded to decide the merits of the case. Today we reexamine our position.

Subsequent to our opinion in *Hoffner*, the Fourth District Appellate Court has ruled, contra to *Hoffner*, that the *Young* certification requirement applies to all suppression orders entered against the State. Specifically the court stated:

"We find nothing in *Young* indicating an intention to limit its certification requirement to orders not previously deemed appealable. Every expression of the court's holding is stated in terms indicating its applicability to all pretrial orders of suppression entered against the State. Its rationale is to limit such appeals to orders substantially impairing the prosecution." *People v. Norris* (1981), 101 Ill. App. 3d 664, 667, 428 N.E.2d 987, 989; see also *People v. Jones* (1981), 102 Ill. App. 3d 238, 241, 429 N.E.2d 1094, 1097-98; *People v. Keath* (1981), 101 Ill. App. 3d 652, 655, 428 N.E.2d 992, 994.

The reasoning of the fourth district court, and the basis for the defendant's position herein, is that the court in *Young* clarified the existing Supreme Court Rule respecting State appeals (73 Ill. 2d R. 604(a)(1)) by establishing a simple *per se* requirement that, henceforth (the court's opinion is dated October 17, 1980), the State, in order to pursue an interlocutory appeal under Rule 604(a)(1), must certify to the trial court that an order of suppression substantially impairs its ability to prosecute the case. In *Young*, the order of suppression resulted when the State sought to introduce statements which had been made under immunity granted by an Illinois statute. The court, in *dicta*, discussed the historical underpinnings of the new rule requiring certification, observing that the State historically had been permitted to appeal suppressions based on violations of search and seizure and involuntary confessions, but that, with respect to suppressions based

on other grounds, the State was variously: (1) precluded from advancing interlocutory appeals; or (2) required to establish that the trial court's suppression order had the effect of blocking prosecution; or (3) permitted to appeal without apparent restriction. Following a thorough analysis of cases attempting to apply Rule 604 to State appeals, the *Young* court held that:

"Rule 604(a)(1) allows an interlocutory appeal by the State of a pretrial suppression order whenever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability to prosecute the case." 82 Ill. 2d 234, 247, 412 N.E.2d 501, 537.

Having thoroughly reviewed *Young* and its progeny, we are convinced that the basis for suppression is no longer determinative of the State's duty to certify. Rather, the relevant inquiry is whether or not the trial court's order "suppressed" evidence. (*People v. Phipps* (1980), 83 Ill. 2d 87, 413 N.E.2d 1277.) In the instant case, the defendant sought suppression of evidence (admissions and statements) allegedly obtained in violation of the defendant's sixth amendment right to counsel. Unquestionably, the trial court's order has the effect of "suppressing" evidence, since the defendant's admissions and statements would not be admissible against the defendant as evidence of his guilt. We hold, therefore, that certification was required in this case. To the extent that our opinion in *Hoffner* is inconsistent with the opinion herein, it should be, and hereby is, overruled.

We turn next to the timing of the State's certification. The defendant contends that a certification filed in the trial court after notice of appeal has been filed is untimely and such certification should be stricken from the record on appeal. In *Hoffner*, we ruled that certification filed by the State after its notice of appeal would be stricken. This decision logically followed from the determination that certification was not required in the first place. Since we have today decided that certification is, indeed, required in all State appeals from suppression orders, we will reexamine the timeliness aspect of the State's certification as well.

The defendant's position proceeds from the premise that the *Young* certification is a prerequisite to a State appeal; if the State attempts to file a notice of appeal before the certification has been filed, the appeal should be dismissed because the State has failed to establish its right to appeal. The State's response to this argument is that the *Young* certification is not jurisdictional, therefore the certificate may be filed at any time without approval of either the trial court or this court. While we agree that the *Young* certification requirement is

not jurisdictional (*Norris; Jones; Keath*), we nonetheless believe that the chronological sequence of events relative to the filing of such certification is relevant to appropriate disposition of a State appeal.

In *Young*, the court specifically stated the purpose of certification.

"Our intention in requiring this certification is not to formulate a standard by which courts may determine the appealability of a particular order. As this court noted in *Van De Rostyne* [(1976), 63 Ill. 2d 364, 349 N.E.2d 16], that would indeed be a heavy burden, one which we do not believe justified by the marginal diminution in the number of appeals which we anticipate such a procedure would produce. Instead we rely solely upon the good-faith evaluation by the prosecutor of the impact of the suppression order in his case. We are not unmindful that in the heat of the adversarial process a State's Attorney may attach to a suppression order a degree of significance which a less involved evaluator would not accord it. On the whole, however, we believe that the State's need to allocate its heavily taxed resources in the most productive manner will naturally limit appeals to those orders which substantially impair its ability to prosecute its case. The prevention of those few appeals which constitute exceptions to this general rule does not, in our judgment, justify the expenditure of the judicial resources necessary to evaluate the effect of the suppression in every instance." 82 Ill. 2d 234, 247-48, 412 N.E.2d 501, 507.

In our opinion, it defies logic for the State to file its notice of appeal first, and then, subsequently, to give careful reflection to evaluate whether or not an interlocutory appeal was warranted.

The State resists dismissal of its appeal, relying on Federal cases ruling on the Federal counterpart of Illinois Supreme Court Rule 604(a)(1), *i.e.*, 18 U.S.C.S. sec. 3731 (1979). These cases have been summarized in *People v. Norris* (1981), 101 Ill. App. 3d 664, 667-68, 428 N.E.2d 987, 990. In the Federal cases, as in *Norris, Jones* and *Keath*, the courts proceeded to consideration of the merits of the appeals before them upon determining that there was no jurisdictional bar. In *Jones*, the court further justified its review of the merits, despite the State's delayed filing of certification, on the basis that Supreme Court Rule 329 (73 Ill. 2d R. 329), allows a reviewing court to correct material omissions and improper authentifications. (102 Ill. App. 3d 239, 242, 429 N.E.2d 1094, 1098.) The language of Rule 329 is discretionary—not mandatory. Thus, while it was within the discretion of the *Jones, Norris* and *Keath* courts, and those Federal courts ruling on the certification issue, to permit the government to perfect

their appeals tardily, it is also within the discretion of this court to strike an untimely certification in a proper case.

Recent case law from the Second District Appellate Court provides some guidance on the handling of defective certifications. In *People v. Lentini* (1982), 106 Ill. App. 3d 695, 435 N.E.2d 1280, the court was faced with an oral, rather than written "certification" made by the State's Attorney upon the trial court's order of suppression. After observing that "[t]he State's right of appellate review is limited to rulings which substantially impair prosecution of the case" (106 Ill. App. 3d 695, 699, 435 N.E.2d 1280, 1283 (citing *People v. Flatt* (1980), 82 Ill. 2d 250, 412 N.E.2d 509)), the court determined that, since the defendant had failed to make a showing of prejudice by the State's failure to reduce its certification to a writing, the oral pronouncement made in the trial court substantially complied with *Young* and, in any event, would have been harmless error. 106 Ill. App. 3d 695, 700, 435 N.E.2d 1280, 1284.

In *People v. Carlton* (1982), 106 Ill. App. 3d 780, 436 N.E.2d 720, defendant was not represented by counsel in the appellate court. The State appealed from an order of suppression, but neither a written nor oral certification of impairment was offered by the State. Rather than dismissing the appeal, the appellate court disposed of the case by remanding it to the trial court with directions to comply with Supreme Court Rule 607 (73 Ill. 2d R. 607) and to determine whether appellate defense counsel should be appointed. In *dicta* the court declared that "[a]bsent a certificate of impairment the State may not seek review of an order suppressing evidence." 106 Ill. App. 3d 780, 782, 436 N.E.2d 720, 722.

Although the *Carlton* court specifically stated that it would not dismiss the appeal under the circumstances therein, the court emphasized that "the certificate of impairment must be supplied *** should subsequent review be sought by the State." (106 Ill. App. 3d 780, 782, 436 N.E.2d 720, 722.) It is apparent to us that the Second District court is prepared to dismiss a State appeal for noncompliance with *Young* in an appropriate case. We agree that dismissal may be an appropriate sanction.

Supreme Court Rule 615(b)(2) (73 Ill. 2d R. 615(b)(2)) grants the reviewing court discretionary authority to "set aside *** any or all of the proceedings subsequent to or dependent upon the *** order from which the appeal is taken." We note in passing that dismissal of the government's appeal, in response to untimely certification, is an appropriate action to be taken at the discretion of Federal courts as well. *United States v. Kleve* (8th Cir. 1972), 465 F.2d 187, 190 ("Fail-

ure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal" (quoting Rule 3, Federal Rules of Appellate Procedure)).

■ While we believe that a defendant to criminal charges has legitimate interests in speedy resolution of the State's case against him and that such interests are impeded by interlocutory appeals, we hesitate to order dismissal in the instant case since the defendant has failed to allege any prejudice whatsoever caused by the delay. We will not countenance a party's blatant manifestation of disrespect for Supreme Court rules, including case-law interpretations of them, by mechanically accepting documentation such as that which the State offered as a certificate of impairment in this case. To do so would emasculate the *Young* requirement such that it would amount to no more than a waste of time. Rather, we find the *Young* certification rule is a substantive one fully capable of enforcement when State noncompliance or defective compliance coupled with prejudice to the defendant are shown. Having said all this, we nonetheless deny defendant's motion to strike certification and to dismiss the appeal in this case because the defendant has shown no prejudice to him.

Finally, we must address the merits of this appeal. The defendant, during custodial interrogation, made certain references to consultation with an attorney. The question on appeal is whether those references were sufficient to constitute an invocation of the defendant's constitutional right to counsel, thus prohibiting any further interrogation. The trial court, after a hearing on defendant's motion to suppress, held that defendant's remarks and actions were sufficient to invoke his right to counsel and ordered suppression of his statements accordingly. The State argues that the trial court's decision is contrary to the manifest weight of the evidence. We disagree.

The relevant evidence presented at the hearing revealed generally that defendant was interviewed at the Peoria Police Department with regard to certain allegations made by his daughter. After being advised of his *Miranda* rights by Sergeant Hammer, defendant agreed to speak to Hammer. Officer Childers then entered the room, and the three of them proceeded to discuss the allegations which had been made concerning the defendant. They also discussed the fact that defendant's children had been taken into custody and spoke of the possibility of a polygraph examination of defendant.

Hammer testified that the defendant stated, "Do you think I should have a lawyer?" or "Who would you recommend as an attor-

ney?" Hammer told the defendant that he had the right to an attorney, that it was defendant's own decision whether to have one, and that it would be improper for Hammer to recommend one. The defendant asked Hammer's advice on whether to take a polygraph examination. Hammer replied, "If I were an attorney I would say to take the polygraph if you were truthful and not take the polygraph if you weren't being truthful."

Hammer and the defendant spoke further and the question of an attorney came up again. Officer Childers placed a telephone directory on the desk for the defendant. Hammer then left the room. A short time later he returned and noted that the defendant had the directory in his hands. Childers was talking with the defendant about an attorney. Hammer reminded defendant that he was entitled to an attorney and that it was defendant's decision. Then Hammer resumed discussing the allegations made by defendant's daughter. It was at this point that the defendant made the admissions which he sought to suppress.

Officer Childers offered a slightly different account of the interrogation. According to her testimony, when she and Hammer initially told defendant that his children were in custody, defendant asked if he would be able to get them back any sooner if he got an attorney. Childers replied that getting an attorney would not necessarily get his children back any sooner, since there would still have to be an investigation and court proceedings. While Hammer was out of the room, Childers asked the defendant several background questions. The defendant asked her who would be a good attorney to help him get his children back. Childers told the defendant that she could not recommend an attorney, but that he was free to look for one in the phone directory. Childers handed the directory to the defendant so that he could search the yellow pages, and pointed out to him how the attorneys were listed according to specializations.

Childers told the defendant that he would need Hammer's permission to use the telephone and that she would check into this for him. Childers then left the room and reported to Hammer that she was through with the background questioning. The officers returned to the room. Hammer advised the defendant about the polygraph procedures, child custody procedures, and about the need to finish the investigation. Then the defendant made certain admissions.

The defendant testified that he had asked to consult with an attorney to get help in the return of his children, to get advice about whether to take the polygraph exam, and to get advice about the criminal charges he faced. He further stated that after he had asked

about using the telephone and the officers returned to the interrogation room without mentioning the phone, he did not pursue his request for an attorney because it had been brought up so many times that he did not see what more he could do to get one.

On these facts, we agree with the trial court that the defendant's repeated comments regarding consultation with counsel were sufficient to constitute an invocation of his right to counsel. The trial court found that defendant's expressions of interest in consulting with counsel triggered that "red light" which compelled a cessation of all further questioning. (*People v. Rafac* (1977), 51 Ill. App. 3d 1, 364 N.E.2d 991.) We cannot say that the trial court's conclusion was contrary to the manifest weight of the evidence. Therefore, the trial court's ruling will not be disturbed.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.