THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
KENNETH HATFIELD, Defendant-Appellee.

Second District No. 2—86—0407

Opinion filed October 7, 1987.

Phillip L. DiMarzio, State's Attorney, of Sycamore (William L. Browers, Virginia M. Ashley, and Lori J. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Glen M. Sowa and John F. Donahue, both of Law Offices of John F. Donahue, of Oak Brook, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

The State appeals the judgment of the circuit court of De Kalb County granting defendant's motion *in limine* to exclude a four-year-old nontestifying child-declarant's out-of-court statements. The State

has filed a certificate that the exclusion of the evidence substantially impairs prosecution of the case. (107 Ill. 2d R. 604(a)(1).) In a motion to dismiss this appeal, defendant challenges the right of the State to appeal the pretrial exclusion of evidence.

Defendant, Kenneth D. Hatfield, was charged with two counts of aggravated criminal sexual assault in violation of section 12—14(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)) in that he knowingly committed an act of sexual penetration upon Daina Hatfield by placing his finger and mouth upon her vagina on or about August 6, 1985. Defendant filed pretrial motions to quash arrest and suppress evidence and a motion contending that the four-year-old child-declarant was not competent to testify. The motions to quash and suppress were denied. The parties stipulated that the child-declarant was not competent to testify. The instant State appeal concerns the trial court's pretrial order denying the child-declarant's out-of-court statement's admission into evidence.

During several hearings before three different judges of the circuit court of De Kalb County, the testimony of several witnesses was received in response to defendant's pretrial motions. The trial judge who entered the instant order of suppression acknowledged his lack of awareness of the testimony previously adduced before the other judges. Therefore, a summary of the evidence presented at the several hearings is appropriate for a background for our determination.

Evidence was presented that defendant and Debra Ames are the parents of the alleged victim Daina. The three lived together, although defendant and Debra were not married. Defendant went to work at about 7:30 a.m. the morning of August 6, 1985. Debra, thereafter, at about 8 a.m., awakened Daina and began washing her. It is at this time that some of the statements in question were allegedly made. Debra testified that Daina told Debra not to touch her down there because she was sore. Debra asked why, and Daina said, "Daddy is fooling with me." Debra asked what Daina meant. Debra testified that Daina showed her by parting her legs and putting her fingers on her vagina and rubbing it. Debra testified that Daina stated that "This is what Daddy does" and added, "You know it." Debra testified that she, Debra, got mad and responded that she did not know it. She testified that she had no prior knowledge of the act described by Daina. She then called the police.

The record also discloses that Daina was interviewed at the offices of the Department of Children and Family Services (DCFS) beginning at about 3:30 p.m. later the same day, August 6, 1985. William St. Arnold, a social worker with the agency, conducted the

interview, although he did not testify at any of the pretrial hearings. Sheriff's Deputy Rogers testified to what Daina told St. Arnold in his presence but outside the presence of her mother, Debra. Daina stated her daddy had touched her that morning and pointed to her vagina and also to the vagina of an anatomically correct female doll, referring to the area as her "butt."

The deputy also testified that the arrest of defendant was predicated upon what Daina had said and demonstrated to her mother, Debra, and to social worker St. Arnold. No medical examination was made.

The record discloses that defendant testified. He acknowledged that in oral statements to Detective Kennett, a written summary of which he read and signed, he had touched Daina's vagina in a game he played with her wherein he tickled her around her vagina during the game. He stated his fingertip may have entered Daina's vagina during this game. He told the detective that his finger may have entered Daina's anal passage and his lips may have touched her vagina while blowing on it.

Detective Kennett testified that defendant stated that he did not perform the acts for sexual gratification. Defendant asked Kennett that the written summation include defendant's request for assistance for his problem with his daughter.

The record also contains testimony from a mutual acquaintance of Daina's mother and father. The acquaintance, Sharon Spohr, testified that Debra told her she was going to leave defendant in such a way as she could keep Daina.

There was also evidence that Daina had been undergoing treatment for a vaginal infection. It appears the condition had existed since birth.

Defendant has raised by a motion to dismiss this appeal the question of whether the State may interlocutorily appeal the granting of a pretrial motion to suppress or exclude the hearsay statements of a child-declarant who, the parties agree, is too young to testify competently. The State has filed a certificate of impairment as required by Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) and *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501. The issue raised by the State's appeal is whether the trial court erred in granting defendant's *pretrial* motion *in limine* to suppress or exclude from evidence the statements of the child-declarant to her mother and later to a social worker concerning the conduct of defendant during that morning.

We deny defendant's motion to dismiss this interlocutory appeal under Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). The pre-

trial suppression order need not be premised on evidence illegally obtained; rather, it may concern evidentiary rulings regarding hearsay and relevancy where the prosecutor certifies to the trial court, as was done here, that the suppression substantially impairs the prosecution.

Some commentators have noted correctly that the provisions of Rule 604(a)(1) continue to divide the districts of the appellate court. (Ill. Ann. Stat., ch. 110A, par. 604(a)(1), Supplement to Historical & Practice Notes, at 2 (Smith-Hurd Supp. 1987).) However, we believe that as to the authority of the State to appeal, *pretrial*, the granting of a *pretrial* motion, the effect of which is to preclude the admission of *any* evidence at the trial, the law is settled in favor of appealability. We emphasize that we are concerned here with only *pretrial* appeals of *pretrial* evidentiary rulings. In particular, we do not address the issues raised in cases addressing State-appealability of preclusive orders granted *after* trial has begun, that is, *mid-trial* orders. See, *e.g.*, *People v. Flatt* (1980), 82 Ill. 2d 250, 412 N.E.2d 509; *People v. Smith* (1987), 151 Ill. App. 3d 922, 503 N.E.2d 584; *People v. Bradley* (1984), 129 Ill. App. 3d 177, 472 N.E.2d 480; *People v. Dorsey* (1984), 129 Ill. App. 3d 128, 472 N.E.2d 101 (*mid-trial* State appeal from *pretrial* order granting defendant's motion was an untimely appeal under Rule 604(a)(1)); *People v. Davidson* (1983), 116 Ill. App. 3d 164, 451 N.E.2d 978; *People v. Johnson* (1983), 113 Ill. App. 3d 367, 447 N.E.2d 502; *People v. Tomasello* (1981), 98 Ill. App. 3d 588, 424 N.E.2d 785; *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 349 N.E.2d 16, *overruled in part by People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501.

In *People v. Carlton* (1983), 98 Ill. 2d 187, 455 N.E.2d 1385, our supreme court clarified its holding in *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501, which was filed the same day as *People v. Flatt* (1980), 82 Ill. 2d 250, 412 N.E.2d 509. *Flatt*, as previously noted, dealt with State-appealability of *mid-trial* orders under Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). The court in *Carlton* observed that the sole question presented by *Carlton* was whether the State was required to file a certificate of impairment in every interlocutory appeal of a pretrial order suppressing evidence under Rule 604(a)(1). In arriving at its holding, the *Carlton* court explained its holding in *Young* by observing that in *Young* it said:

> "We hold, therefore, that Rule 604(a)(1) allows an interlocutory appeal by the State of a pretrial suppression order whenever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability to prosecute the case." (*People v. Young* (1980), 82 Ill. 2d 234, 247, 412 N.E.2d 501.)

The *Carlton* court explained that *Young* established a procedural device for the application of Rule 604(a)(1). The focus of the analysis of the issue of the State's authority to appeal a particular pretrial order precluding the admission of evidence is on the "effect of the suppression order and *not on the nature of the evidence suppressed.*" (Emphasis added.) (*People v. Carlton* (1983), 98 Ill. 2d 187, 191, 455 N.E.2d 1385.) The court held that the certification of impairment must be filed in every case in which the State seeks to appeal from a pretrial order suppressing evidence. Summarizing, the court said that appeals are permitted and certification is required when the suppression order substantially impairs the ability to prosecute the case "without fitting those orders into neatly compartmentalized classifications." 98 Ill. 2d 187, 193, 455 N.E.2d 1385.

■ We perceive that those classifications, abolished by *Young* and whose abolition was confirmed by *Carlton,* embrace evidence allegedly inadmissible under the rules of evidence; for example, hearsay or evidence lacking relevance or materiality. (*People v. Carlton* (1983), 98 Ill. 2d 187, 455 N.E.2d 1385.) The resolution of these issues, raised and appealed pretrial, serves the objectives of the rule announced in *Young,* which is to prevent erroneous exclusionary rulings from frustrating the primary purpose of the trial—to ascertain the truth of the charges. (*People v. Young* (1980), 82 Ill. 2d 234, 245, 412 N.E.2d 501.) We conclude, therefore, that the State has the authority under Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) to take an interlocutory appeal before the trial has begun (*People v. Dorsey* (1984), 129 Ill. App. 3d 128, 472 N.E.2d 101) of an order denying admissibility of any evidence, without regard to its nature, upon the certification that the suppression or order preventing the evidence's being admitted substantially impairs the State's ability to prosecute the case. *People v. Carlton* (1983), 98 Ill. 2d 187, 455 N.E.2d 1385; *People v. Phipps* (1980), 83 Ill. 2d 87, 413 N.E.2d 1277; *People v. Young* (1980), 82 Ill. 2d 234, 247, 412 N.E.2d 501; *People v. Holowko* (1984), 124 Ill. App. 3d 426, 464 N.E.2d 813; *People v. McQueen* (1983), 115 Ill. App. 3d 833, 450 N.E.2d 921; *People v. Wallace* (1982), 106 Ill. App. 3d 567, 435 N.E.2d 960; see *People v. Jones* (1981), 102 Ill. App. 3d 238, 429 N.E.2d 1094.

In light of our analysis of supreme court authority on this question, we conclude that one of the cases holding to the contrary, which was cited by defendant, was wrongly decided. We decline to follow *People v. McCollins* (1984), 126 Ill. App. 3d 1083, 468 N.E.2d 196, decided by the Appellate Court for the Third District after our supreme court's decision in *Carlton.* In *McCollins,* the court distinguished

"suppressions" from "exclusions" and found that "suppression" orders were appealable under Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) and held that the State may not appeal pretrial orders based solely on grounds of relevancy, materiality or hearsay, citing this court's *People v. Johnson* (1983), 113 Ill. App. 3d 367, 374, 447 N.E.2d 502. However, while *Johnson* presents an excellent discussion of the principles involved in State-appealability of evidentiary rulings, it involved a mid-trial order and appeal and is inapposite to the facts of both *McCollins* and the instant case. *People v. Montgomery* (1980), 84 Ill. App. 3d 695, 405 N.E.2d 1275, a case decided by the Appellate Court for the First District but filed three months before our supreme court's decision in *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501, also relied on a "suppression/exclusion" distinction and held that the exclusion from evidence of a palm print on the ground that it was more prejudicial than probative was not a "suppression" under Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)), and, therefore, the pretrial order was not appealable because it was not a "suppression." (*People v. Montgomery* (1980), 84 Ill. App. 3d 695, 703-04, 405 N.E.2d 1275.) We conclude the case has been implicitly overruled by *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501, *People v. Phipps* (1980), 83 Ill. 2d 87, 413 N.E.2d 1277, and *People v. Carlton* (1983), 98 Ill. 2d 187, 455 N.E.2d 1385.

In *People v. Bean* (1985), 135 Ill. App. 3d 336, 481 N.E.2d 888, the Appellate Court for the Fifth District also found a distinction between the "suppression" and the "exclusion" of evidence, adhering to its analysis in *People v. Davidson* (1983), 116 Ill. App. 3d 164, 170, 451 N.E.2d 978. However, both *Davidson* and *Bean* are distinguishable because they also involved mid-trial orders and not pretrial orders as in the instant case. Similarly, the holding of this court in *People v. Benda* (1984), 124 Ill. App. 3d 950, 464 N.E.2d 1268, is also distinguishable from the instant case, as it related to a mid-trial order. Again, defendant's motion to dismiss the State's appeal is denied.

■ There are two questions raised by this appeal: does the spontaneous declaration exception to the hearsay rule authorize the admission into evidence of out-of-court statements and attendant physical demonstrations of a four-year-old child-declarant who has been determined by stipulation of the State and the defendant to be incompetent to testify by reason of age: (1) where the child-declarant complained to her mother, the morning of the occurrence, of soreness in the vaginal area during an 8 a.m. bathing and responded to her mother's inquiry of "Why?" with "Daddy's fooling with me," and demonstrated by parting her legs and rubbing her vagina, saying "This is what

Daddy does. You know it"; and (2) where the child-declarant made the similar statements and demonstrations about five hours following the child-declarant's initial statements in response to the questions of the social worker assigned to investigate the child-declarant's earlier statements to her mother concerning the alleged conduct of her father earlier that day, during the morning.

We note at the outset that section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10) is not applicable to the instant case. That statute authorizes the admission into evidence, as an exception to the hearsay rule, the testimony of the child as to his or her complaint of the perpetration of a sexual act upon him or her and the testimony of the making of the complaint by the witness to whom the complaint was made. In the instant case, by stipulation, the child-declarant will not testify, and, therefore, the statute is not applicable by its terms.

■ As a general rule, out-of-court statements which are offered to prove the truth of the matter asserted therein are inadmissible as hearsay. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 528-29, 464 N.E.2d 659.) However, courts have recognized certain exceptions to the hearsay rule when and if the out-of-court statements possess other characteristics which insure their reliability. In *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25, our supreme court elaborated upon the exception to the hearsay rule for spontaneous declarations:

> " 'A spontaneous exclamation may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him.' " (28 Ill. 2d 464, 470-71, 193 N.E.2d 25, quoting *Keefe v. State* (1937), 50 Ariz. 293, 72 P.2d 425, 427.)

Damen discussed three factors which need to be considered in deter-

mining the admissibility of a statement under the spontaneous declaration exception: " '(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence.' " 28 Ill. 2d 464, 471, 193 N.E.2d 25, quoting *People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804.

 As was recently observed by the Appellate Court for the First District, cases subsequent to *Poland* and *Damen* demonstrate that while these three factors continue to provide guidance, our courts now employ a "totality of the circumstances" approach to determine whether a particular statement is reliable enough to be admissible, indicating that none of the *Damen* elements is singularly determinative. (*People v. Smith* (1984), 127 Ill. App. 3d 622, 627, 469 N.E.2d 634.) Hence, the admissibility of spontaneous declarations should be determined on a case-by-case basis after considering all relevant factual considerations. (*People v. Parisie* (1972), 5 Ill. App. 3d 1009, 1028, 287 N.E.2d 310.) Moreover, "[I]t is not the *time element* [referring to the period between the startling occurrence and the statement] that controls, but the existence or lack of spontaneity in the light of the surrounding circumstances that is determinative." (Emphasis in original.) (5 Ill. App. 3d 1009, 1028, 287 N.E.2d 310.) The fact that statements are made in response to queries also does not automatically negate their spontaneity, but is a factor to be considered. (*In re Hatfield* (1979), 72 Ill. App. 3d 249, 257, 390 N.E.2d 453.) The single question—"What happened?"—to the declarant does not disqualify an utterance that is otherwise voluntary and spontaneous. *People v. Damen* (1963), 28 Ill. 2d 464, 472, 193 N.E.2d 25; *People v. Webb* (1984), 125 Ill. App. 3d 924, 933, 466 N.E.2d 936. See *People v. Jarvis* (1987), 158 Ill. App. 3d 415, 511 N.E.2d 813.

We have found the extensively researched opinion in *People v. Miller* (1978), 58 Ill. App. 3d 156, 373 N.E.2d 1077, to be particularly instructive and responsive to several of the issues raised by defendant here. In *Miller* the court said:

> "*Willson* [*People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485] considered but does not forever preclude the admission into evidence of the *res gestae* utterances of a child who would otherwise be incompetent to testify before the jury. In *Willson*, unlike the instant case, the child's utterances were not contemporaneous with the commission of the crime and could not be considered spontaneous or *res gestae* utterances.
>
> In the instant case, the trial court permitted Ms. Farren to testify as to her young son's responses to questioning within

minutes of the commission of this crime. In our opinion, those responses were indeed utterances which would be characterized as spontaneous or *res gestae* declarations. (Compare *People v. Damen* (1963), 28 Ill. 2d 464, 470-74, 193 N.E.2d 25, and *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064, with *People v. Taylor* (1971), 48 Ill. 2d 91, 96-97, 268 N.E.2d 865, and *Ketcham v. State* (1959), 240 Ind. 107, 109-14, 162 N.E.2d 247, 248-50.) As in *Damen*, the fact that the spontaneous declaration was in response to another person's questioning does not destroy its spontaneity. Accordingly, the court did not abuse its discretion by permitting Ms. Farren to testify to those spontaneous or *res gestae* statements, even though her son was later found to be incompetent to testify. *McCann; Haley.*

As an alternative resolution of the first issue, it seems clear to us that the event being related by the victim here was, considering his age, a sufficiently startling occurrence to make it likely that he would tell the truth to his mother. It is also unlikely that a child of that age would in such a short period of time fabricate the statement attributed to him. We make this alternative resolution with the knowledge that some writers believe that use of the term *res gestae* inhibits an understanding analysis of the hearsay problem. (*People v. Poland* (1961), 22 Ill. 2d 175, 180, 174 N.E.2d 804, 807; Cleary, Handbook of Illinois Evidence sec. 17.24, at 291-92 (2d ed. 1963); McCormick, Evidence sec. 272, at 578 (1954) ('From the mists of *res gestae* \*\*\*.') In essence, we deem the victim's statements in this case to be both trustworthy and extremely probative of guilt. Their exclusion, we believe, would be manifestly unjust." 58 Ill. App. 3d 156, 160-61, 373 N.E.2d 1077.

The Appellate Court for the Third District recently considered a case where a 2½-year-old child, who had been briefly abducted and apparently vaginally and rectally molested (semen in rectum medically ascertained) the previous night, acted strangely the following morning, complained of pain and would not sit in her bath. At 5:30 p.m. the victim's brother mentioned his friend David, not the defendant (who was also named David), whereupon the victim-declarant said "David bad. David bad. Pushed out of car. Wanna go home. Rocks hurt my feet. Wanna go home." The court said:

> "Elapsed time alone does not control the admissibility of a statement as a spontaneous declaration. The critical factor is the opportunity to fabricate. (*People v. Sanchez* (1982), 105 Ill. App. 3d 488, 434 N.E.2d 395.) The trial court must look to the

surrounding circumstances to determine whether there was an opportunity for reflection and invention. *People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.

This court has recognized that the stress of a sexual assault upon a child will remain with the child long after it occurred, and that the child's statements will be unfabricated for three reasons: (1) the child is apt to repress the incident; (2) it is often unlikely the child will discuss such a stressful incident with anyone but the mother; and (3) the characteristics of young children work to produce declarations free of conscious fabrication for a longer period after the incident than adults. *People v. Bitler* (1986), 146 Ill. App. 3d 477, 497 N.E.2d 137.

In *Bitler*, the two female victims, aged five and three, were awakened during the night by their mother, who had become suspicious that someone had been molesting her children. In response to their mother's questions, each child indicated that she had been molested. The trial court permitted the mother to repeat the children's answers at trial. On appeal, this court upheld the admission of the children's statements as spontaneous declarations, even though the time lapse between the declarations and the molestation may have been as long as 24 hours. We found that the victims had both insufficient time and, in light of their extreme youth, opportunity to fabricate their statements.

As the victims in *Bitler*, we find that the instant 2½-year-old victim had neither the time nor the motive or opportunity to fabricate her statement. The defendant's suggestion that the victim's behavior on the day following the incident was not unusual is completely contradicted by the mother's testimony that the victim was not acting normally. The fact that the victim uttered her statement at the mere mention of the name 'David,' and not in response to even a general question, is further indication of its spontaneity. *That the statement was made 15 hours after the incident occurred does not diminish that spontaneity.* The stress caused by the defendant's acts would have lingered long after the acts themselves were committed. (*People v. Bitler* (1986), 146 Ill. App. 3d 477, 497 N.E.2d 137.) We find that the trial court properly admitted the victim's statements as spontaneous declarations." (Emphasis added.) *People v. Phillips* (1987), 159 Ill. App. 3d 483, 490-91, 511 N.E.2d 1193.

■■ There are bound to be nuances in cases of this genre (alleged molestation of young children) whose facts will vary from case to

case, requiring each to be examined carefully. However, the two recent cases cited, *Phillips* and *Bitler*, and the earlier *Miller* case, reasonably embrace the underlying facts of the instant case and adequately recite, in our view, the more well-reasoned holdings of the Illinois reviewing courts. The general rule that emerges is that the statements and demonstrations of a nontestifying child-declarant to a witness, identifying a person as having performed certain conduct which results in pain, or is stressful to the child-declarant, and made within a reasonable time of the complained-of conduct, meet the three-prong test of admissibility as spontaneous or excited declarations or utterances. *People v. Phillips* (1987), 159 Ill. App. 3d 483, 511 N.E.2d 1193; *People v. Lewis* (1986), 147 Ill. App. 3d 249, 256, 498 N.E.2d 1169 (a three-year-old child's calm demeanor at the time of the statements one hour after the alleged incident does not destroy its spontaneity); *People v. Bitler* (1986), 146 Ill. App. 3d 477, 497 N.E.2d 137; *People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132 (the admission into evidence at trial of a four-year-old testimonially incompetent child-declarant's statements to the baby-sitter immediately after molestation, and to child's mother seven hours later, was not plain error so as to require a relaxation of the waiver rule); *People v. McNichols* (1986), 139 Ill. App. 3d 947, 954-55, 487 N.E.2d 1252; *People v. Robinson* (1981), 94 Ill. App. 3d 304, 418 N.E.2d 899; see *In re Marriage of Dunn* (1987), 155 Ill. App. 3d 247, 251-53, 508 N.E.2d 250 (the statements allegedly made to the mother, the maternal grandmother and the kindergarten teacher 10 months after the alleged incident were not spontaneous); see also *People v. Johnson* (1986), 149 Ill. App. 3d 128, 131, 500 N.E.2d 657 (statements of a nontestifying six-year-old child-declarant to a social worker, a nurse and an assistant State's Attorney, two days after the third alleged attack upon the victim by the defendant over a seven-month period, did not qualify as spontaneous declarations as they were made two days after the most recent attack).

■ Again, we are not unmindful of some disagreement as to what facts support the legal determination of spontaneity. (See, *e.g.*, *People v. Sephus* (1986), 150 Ill. App. 3d 272, 274-75, 501 N.E.2d 175 (a 12-year-old child-declarant's statements to her mother one hour after the incident of defendant's alleged molestation of her "arguably took place too long after the incident to be considered spontaneous" and the child-declarant's having already discussed the incident with a family friend after escaping from defendant destroyed the spontaneity of the statement to her mother); *People v. McKee* (1977), 52 Ill. App. 3d 689, 367 N.E.2d 1000 (the court found that the mother's testimony

of the substance of the complaint made by the child several hours after the incident was not a spontaneous declaration by reason of the passage of sufficient time to fabricate).) Nonetheless, we conclude that the statements of Daina to her mother and to the DCFS social worker were erroneously excluded by the trial court's granting of defendant's motion.

■ Defendant argues that the statements of the child-declarant neither prove a crime nor the allegations of the charges against defendant. However, defendant cites no authority for his argument, particularly in the context of the admissibility of the statements as spontaneous-declaration exceptions to the hearsay rule. Thus, the arguments are waived as being in violation of Supreme Court Rule 341(e)(7). 107 Ill. 2d R. 341(e)(7); *People v. Ramirez* (1983), 98 Ill. 2d 439, 472, 457 N.E.2d 31.

The judgment of the circuit court of De Kalb County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

REINHARD and HOPF, JJ., concur.